# Exhibit A

## IN THE STATE COURT OF TIFT COUNTY
## STATE OF GEORGIA

ANGE DAVIS, individually and as )
**Administrator of THE ESTATE OF** )
**JANIE MAE WASHINGTON, deceased** )
 )
 )  **CIVIL ACT. FILE NO.:** *2017CT040*
   **Plaintiffs,** )
 )
**v.** )
 )
**GGNSC ADMINISTRATIVE SERVICES LLC** )
**d/b/a GOLDEN LIVING CENTER** )
**TIFTON** )
 )
   **Defendant.** )

### SUMMONS

You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:

Rob Schenk
SCHENK SMITH LLC
1126 Ponce de Leon Ave NE
Atlanta, GA 30306
(678) 823-7678

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this Summons upon you exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in this Complaint.

This ___26___ day of ___April___, ___2017___.

_____
Clerk of Court

By ___Cheryl Ogletree___
· Deputy Clerk

FILED IN OFFICE

APR 2 8 2017

CLAY PATE, CLERK OF COURT



## IN THE STATE COURT OF TIFT COUNTY
## STATE OF GEORGIA

ANGE DAVIS, individually and as )
Administrator of THE ESTATE OF )
JANIE MAE WASHINGTON, deceased )
                              )     CIVIL ACT. FILE NO.: 2017CT040
        Plaintiffs,       )
                               )
v.                             )
                             )
GGNSC ADMINISTRATIVE SERVICES LLC )
d/b/a GOLDEN LIVING CENTER )
TIFTON                         )
                             )
        Defendant.      )

## COMPLAINT FOR DAMAGES

COME NOW, Ange Davis, Individually and as Administrator the Estate of Janie

Mae Washington, deceased, and present this Complaint for Damages against GGNSC

Administrative Services LLC d/b/a Golden Living Center Tifton, (the "Defendant") by and

through counsel, and show the Court as follows:

1.     In this action, Plaintiff Ange Davis shows that the Defendant's violations of federal

          state law and regulations in the operation of a long-term care facility,

          negligence, per se, professional negligence, simple negligence, and breach of

          contract in the provision of nursing home care, treatment and services led directly

          and proximately to severe and life threatening injuries, illness, pain, suffering, and

          death of Janie Mae Washington. At all times material to this lawsuit, Janie Mae

          Washington received care, treatment, and supervision while residing at the

          Defendant's facility, which is located in Tift County, Georgia. Plaintiff Ange Davis,

          individually and in her capacity as Administrator of the Estate of Janie Mae

FILED IN OFFICE

APR 26 2017

CLAY PA[...] ORO [...] COURT

Washington, deceased, therefore seeks damages to recover upon claims arising under tort and contract.

## JURISDICTION AND VENUE

2.   Plaintiff Ange Davis, is an individual over the age of eighteen (18) years and brings this lawsuit individually and in her capacity as the Administrator of the Estate of Janie Mae Washington, deceased. Plaintiff hereby subjects herself to the jurisdiction of this Court.

3.   Defendant is a foreign limited liability company formed under the laws of the State of Delaware, with its principal place of business located at 5220 Tennysong PKWY, Suite 400, Plano, TX, 75024, USA. The Defendant owns, operates, and/or manages a skilled nursing facility called Golden Living Center located in Tifton, Georgia. The Defendant can be served with process upon its registered agent for service of process in this State to wit: CSC of Cobb County, Inc., 192 Anderson Street SE, Suite 125, Cobb County, Marietta, 30060, Georgia.

4.   Upon proper service of process, and based on the foregoing, jurisdiction is proper in this Court. Venue is proper in this Court pursuant to O.C.G.A. 14-2-510 (b) (3) 2017.

## PARTIES

5.   Plaintiff Ange Davis is the daughter of Janie Mae Washington. Plaintiff Ange Davis brings this suit individually and in her capacity as the Administrator of the Estate of Janie Mae Washington, deceased. Plaintiff Ange Davis seeks to recover upon Janie Mae Washington's individual claims against the Defendant arising in tort and contracts as the Administrator of her mother's Estate. Plaintiff Ange Davis further

seeks to recover in her individual capacity as the surviving child of Janie Mae Washington for the wrongful death of Janie Mae Washington.

6.     The Defendant owns, operates, and/or manages a long-term care skilled nursing facility called Golden Living Center located at 1451 Newton Drive, Tifton, Tift County, Georgia, 31794 (hereinafter, "GLC"). The Defendant was contractually charged with responsibility for the provision of residence, care, treatment, and convalescent/rehabilitation services to Janie Mae Washington. The Defendant negligently failed at its responsibilities as described below.

## FACTS

7.     Janie Mae Washington was 73 years old when she was initially admitted to GLC on January 5th, 2011. Ms. Washington's past medical history was significant for end-stage renal disease, diabetes, hyperlipidemia, anemia, Alzheimer's disease, seizures, hypertension, and congestive heart failure.

8.     Ms. Washington weighed 122 pounds on January 13th, 2014. She received nutrition via percutaneous endoscopic gastrostomy (PEG) tube with bolus feedings administered throughout the day. At that time, Ms. Washington received dialysis treatment three times weekly.

9.     As of February 2014, Ms. Washington was incontinent of bowel and bladder and required total assistance for all activities of daily living.

10.    On February 14th, 2014, the initial progress note documented "some discolorations noted on sacrum, but no problems noted."

11.   A skin care plan was developed on February 16th, 2014. The care plan noted that nutritional and hydration support, along with pressure reduction mattress, turning and repositioning schedule and skin assessments per policy would be provided.

12.   The Minimum Data Set (MDS), a comprehensive assessment did not identify skin impairment on April 9th, 2014, May 27th, 2014 and June 11th, 2014. 04/09/14. The open area on Ms. Washington's sacral area was healed on May 8th, 2014 and the treatment was discontinued. Ms. Washington's weight was 119 pounds.

13.   On July 5th 2014, a sacral pressure ulcer is noted. GLC records indicate the pressure ulcer was a Stage III with slough noted in the wound bed and increased measurements.

14.   GLC staff is instructed by her wound care doctor to reposition Ms. Washington every two hours, keep the wound clean and dry, and to keep Ms. Washington off her back. These instructions are not implemented by GLC at any time from July 2014 through January 2016.

15.   Ange Davis visited her mother at GLC on a consistent, daily basis, from February 2014 through December 2016. During that time frame, Ange Davis consistently found Ms. Washington on her back, without pressure ulcer wound support devices, soiled for long periods of time, and unturned.

16.   Ms. Washington's sacral wound continued at Stage III or Stage IV from 2014 through January 2016.

17.   Ms. Washington passed away January 15th, 2016.

## COUNT I

## NEGLIGENCE PER SE BASED UPON VIOALTION OF REQUIREMENTS FOR LONG-TERM CARE FACILITIES AT 42 CFR § 483.1 et seq.

18.   Plaintiffs re-allege and incorporate by reference their allegations in Paragraphs 1 through 17 as if fully set forth herein.

19.   GLC is a licensed and certified long-term care facility that provides skilled nursing care as a participant in the Medicare program and that provides nursing care as a participant in the Medicaid program; GLC receives funding under the Medicare and Medicaid programs.

20.   The U.S. Department of Health and Human Services has promulgated a number of regulations pursuant to its authority under OBRA at 42 USCA § 1395i-3 related to the care, treatment, and services provided to residents of skilled nursing facilities participating in the Medicare program and nursing facilities participating in the Medicaid program. Among those regulations are the following:

   (a)   42 CFR §483.10 and 15(a) provide that the resident has a right to live a dignified existence,

   (b)   42 CFR §483.13(c) requires the facility to implement protocols to protect the resident from neglect,

   (c)   42 CFR §483.13(c)(2)-(4) requires the facility to investigate all allegations of neglect, and to report the allegations of neglect and the results of the investigation to the appropriate state agency within five (5) days of findings of neglect. The facility must also take appropriate corrective action upon verification of a violation,

   (d)   42 CFR §483.15 requires the facility to care for its residents in a manner that maintains and enhances the resident's quality of life,

(e)     42 CFR §483.15(e)(1) requires that each resident be provided services in the facility to accommodate their individual needs,

(f)     42 CFR §483.20(b) requires the facility to prepare timely comprehensive assessments of the resident's needs,

(g)     42 CFR §483.20(g) requires that the facility must perform an assessment of the Resident that accurately reflects the resident's status,

(h)     42 CFR §483.20(k) requires the facility to develop a comprehensive care plan to meet the resident's medical, nursing and psychosocial needs identified in the comprehensive assessment,

(i)     42 CFR §483.20(k)(3) requires that services provided or arranged by the facility meet professional standards of quality and be provided by qualified persons,

(j)     42 CFR §483.25 requires the facility to provide services to attain and maintain the highest practicable physical, mental and psychosocial well-being in accordance with the resident's assessments and Care Plan,

(k)     42 CFR § 483.25(a)(3) requires that the facility must provide the necessary services for a resident to maintain good nutrition, grooming and personal hygiene,

(l)     42 CFR §483.25(c) requires that the facility must ensure that a resident does not develop pressure sores and if a resident has a pressure sore that he/she receives the necessary treatment and services to promote healing, prevent infection and prevent new sores from developing,

(m)     42 CFR §483.25(d) requires that a resident who is incontinent of bladder receives the appropriate treatment and services to prevent urinary tract infections,

(n)     42 CFR §483.25(i) requires that the facility must ensure that a resident maintains acceptable parameters of nutritional status and receives a therapeutic diet when needed,

(o)     42 CFR 483.25(j) requires that the facility must provide each resident with sufficient fluid intake to maintain proper hydration,

(p)     42 CFR §483.30 requires the facility to maintain an adequate nursing staff, and to provide a properly qualified nursing staff,

(q)     42 CFR §483.35(d) requires that the facility must provide food prepared in a form designed to meet the residents individual needs and that substitutes are offered of similar nutritive value,

(r)     42 CFR §483.40(a) requires the facility to ensure that each patient's medical care is supervised by a physician,

(s)     42 CFR §483.40 requires the facility to keep the resident's treating physician informed of their medical condition,

(t)     42 CFR §483.40(d) requires the facility to provide or make available emergency medical care to residents at any and all times,

(u)     42 CFR §483.75 requires that the facility be administered in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of each resident,

(v)     42 CFR §483.75 requires properly trained, qualified and competent staff,

(w)    42 CFR §483.75(b) requires the facility to operate and provide services in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

(x)    42 CFR §483.75(h) requires the facility to obtain outside services that meet professional standards and principles, and

(y)    42 CFR §483.75(l) requires that the facility must maintain clinical records on each resident in accordance with accepted professional standards and practices.

21.    As a licensed and certified long-term care facility which receives funding under the Medicare and Medicaid programs, the Defendant's long-term care facility is subject to the above federal regulations for the provision of care, treatment and services to residents of the facility.

22.    As described in this Complaint, the Defendant violated the above regulations of the U.S. Department of Health and Human Services in the following acts and omissions, among others, to be demonstrated by the evidence:

(a)    Defendant failed to implement appropriate interventions to prevent significant pressure ulcer development.

(b)    Defendant failed to document wound conditions and failed to implement timely, and adequate interventions for a resident with poor skin integrity and pressure ulcers.

(c)    Defendant failed to recognize significant clinical condition changes in skin integrity.

(d)     Defendant failed to closely monitor and implement adequate interventions for a resident with deteriorating weight and protein status.

(e)     Defendant failed to recognize Ms. Brown's deteriorating condition and failed to transfer her to the hospital in a timely manner.

(f)     Defendant failed to maintain Ms. Brown's highest practicable physical, mental, and psychosocial well-being.

(g)     Defendant was negligent in all of the acts and omissions described in paragraphs 1-17 above.

23.     The Defendant's acts and omissions constituting violation of the above-referenced federal regulations at 42 CFR §483.1 et seq. constitute negligence per se or negligence as a matter of law pursuant to OCGA §51-1-6.

24.     The Defendant's failure to comply with the above federal mandates led directly to Ms. Washington's serious injury, pain, suffering, and death.

25.     As a result of the Defendant's negligence per se and the resultant damages and harm, the Plaintiffs are entitled to an award of damages as set out below.

## COUNT II

### VIOLATION OF REQUIREMENTS OF THE GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE FACILITIES AT OCGA §31-8-100 et seq. AS TO ALL DEFENDANTS

26.     Plaintiffs re-allege and incorporate by reference their allegations in Paragraphs 1 through 17 as if fully set forth herein.

27.     GLC is a "long-term care facility" as that term is defined under OCGA §31-8-102(3).

28. The State of Georgia has promulgated the Bill of Rights for Residents of Long-Term Care Facilities at OCGA §31-8-100 et seq. which sets out requirements for those providing care, treatment, and services to residents of long-term care facilities in this state. In particular, OCGA § 31-8-108(a) requires that residents of long-term care facilities receive care, treatment, and services that are adequate and appropriate and which must be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including those listed in the preceding count of this Complaint), and with respect for the resident's personal dignity, among other requirements.

29. Pursuant to its authority granted by statute, the Georgia Department of Human Resources has promulgated a number of regulations for the provision of care, treatment, and services to residents of long-term care facilities. In particular, Ga. Comp. R. & Regs. 111-8-50-.07 requires that each resident be provided with care, treatment and services which are adequate and appropriate for the condition of the resident as determined by the resident's developing care plan. The regulation also requires that services be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including the state laws and federal regulations identified above).

30. Defendant violated the provisions of the Georgia Bill of Rights for Residents of Long-Term Care Facilities and the regulations of the Georgia Department of Human Resources identified above in all of the acts and omissions that are described in this Complaint for Damages. Among the acts and omissions

constituting violation of the Georgia Bill of Rights for Residents of Long-Term Care Facilities are the following:

31. Defendant failed to implement appropriate interventions to prevent significant pressure ulcer development.

32. Defendant failed to document wound conditions and failed to implement timely, and adequate interventions for a resident with poor skin integrity and pressure ulcers.

33. Defendant failed to recognize significant clinical condition changes in skin integrity.

34. Defendant failed to closely monitor and implement adequate interventions for a resident with deteriorating weight and protein status.

35. Defendant failed to recognize Ms. Washington's deteriorating condition and failed to transfer Ms. Washington to the hospital in a timely manner.

36. Defendant failed to maintain Ms. Washington's highest practicable physical, mental, and psychosocial well-being.

37. Defendant was negligent in all of the acts and omissions described in paragraphs 1-17 above.

38. Pursuant to OCGA §31-8-126(a), the Plaintiff has a cause of action for damages against the Defendant as a result of Defendant's violations of the rights granted under the Georgia Bill of Rights for Residents of Long-Term Care Facilities such as those identified under OCGA §31-8-108(a).

39. Additionally, the Defendant's violations of the Georgia Bill of Rights for Residents of Long-Term Care Facilities and the regulations of the Georgia Department of

Human Resources set out above constitute negligence per se or negligence as a matter of law pursuant to OCGA §51-1-6.

40. Defendant's failure to comply with the Georgia Bill of Rights for Residents of Long-Term Care Facilities and the regulations of the Georgia Department of Human Resources set out above lead directly to the serious injury, terrible pain, suffering, anguish and death of Mr. Smith.

41. As a result of the Defendant's acts and omissions constituting violation of the Georgia Bill of Rights for Residents of Long-Term Care Facilities and negligence per se, and the resultant damages and harm, the Plaintiff is entitled to an award of damages as set out below.

## COUNT III

### GENERAL NEGLIGENCE

42. Plaintiffs re-allege and incorporate by reference their allegations in Paragraphs 1 through 17 as if fully set forth herein.

43. Plaintiff entered into a contract with the Defendant for the provision of residence, care, treatment, and services at the Defendant's facility, and Defendant assumed a duty to exercise ordinary care in the provision of care, treatment, and services to Ms. Washington. The Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment, and services provided to Ms. Washington, and as a result she sustained serious injury, great pain, suffering, and death as a result as demonstrated below.

44. Defendant failed to maintain an adequate nursing staff to provide for Ms. Washington's needs.

45. Defendant failed to provide properly trained, qualified, and competent staff to care for Ms. Washington.

46. Defendant failed to properly train and supervise the nursing staff to provide the appropriate care, treatment, and services that Ms. Washington needed.

47. Defendant's staff was negligent in a number of other ways identified herein and to be further demonstrated by the evidence.

48. Many of the Defendant's acts and omissions described herein are ministerial in nature and constitute simple negligence for which the Defendant is liable to the Plaintiff.

49. As a direct and proximate result of each one of the above-described negligent acts and omissions, Ms. Washington suffered grave injury, death and suffered tremendously.

50. As a result of the foregoing acts and omissions and the resultant injuries, pain, suffering, and death of Ms. Washington, the Plaintiffs are entitled to recover from the Defendant as set out below.

## COUNT IV

### PROFESSIONAL NEGLIGENCE

51. Plaintiffs re-allege and incorporate by reference their allegations in Paragraphs 1 through 17 as if fully set forth herein.

52. Plaintiff entered into a contract with the Defendant for the provision of long-term residence, care, treatment, and services at the Defendant's facility, and Defendant failed to provide that care, treatment, and service as described herein.

53. Pursuant to the requirements of OCGA §9-11-9.1, the Plaintiff has attached hereto as **Exhibit A** the affidavit and CV of Dr. John Fullerton who is a medical doctor duly licensed to practice medicine by the State of California. Dr. Fullerton has prepared an affidavit which sets forth the Defendant's acts and omissions related to the care, treatment, and services provided to Ms. Washington which proximately caused her severe injury, pain, suffering, and death and which illustrate Defendant's failure to provide the degree of care and skill required of these Defendant in its profession, as set out below. The Plaintiff hereby incorporates by this reference the entire contents of Dr. Fullerton's affidavit and CV.

54. Pursuant to his education, training, and experience, Dr. Fullerton is familiar with the guidelines and regulations of long term care facilities similar to GLC including the requirement to appropriately monitor a resident at high risk for skin breakdown.

55. Also pursuant to his education, training, and experience, Dr. Fullerton is familiar with the proper care of patients who have medical conditions similar to Ms. Washington.

56. Pursuant to his education, training, and experience, Dr. Fullerton is fully familiar with the requirements for the development of appropriate care plans for residents of long term care facilities similar to GLC.

57. As a result of Dr. Fullerton's education, training, and experience outlined above, he is well qualified to testify as to the acceptable standards of care, with respect

to the below referenced aspects of nursing care, both for nursing care that occurs at a nursing home, and/or any type of long-term care setting.

58. Based upon the foregoing, Dr. Fullerton is fully competent to testify about the matters set forth below.

59. The standard of care for staff in the long term care setting requires that the staff prepare proper assessments and care plans for the identification of residents at risk for the development of pressure ulcers and other skin breakdown and injuries caused by improper monitoring, handling and the provision of care and to provide proper care for the prevention and treatment of the same.

60. The standard of care for staff in the long term care setting requires that the staff provide appropriate wound interventions for the health of the resident.

61. The standard of care for staff in the long term care setting requires that the staff provide appropriate monitoring and update care plans when the needs of a resident has changed substantially.

62. The standard of care for staff in the long term care setting requires that the staff recognize significant changes in a resident and notify the physician and family regarding the changes as well as initiate a resident's transfer to an acute care center sufficient to meet the resident's needs.

63. The standard of care for staff in the long term care setting requires that the staff obtain immediate emergency or hospital care when the resident's condition requires it.

64.   As a result of each one of the above described failures to follow the acceptable standards of care, Ms. Washington lacked appropriate health care, causing tremendous struggle, suffering and death.

65.   The Defendant's acts and omissions described above constitute professional negligence, as a result of which the Plaintiffs are entitled to recover from the Defendant as set out below.

## COUNT V

## BREACH OF CONTRACT

66.   Plaintiffs re-allege and incorporate by reference their allegations in Paragraphs 1 through 17 as if fully set forth herein.

67.   Plaintiff entered into a contract with the Defendant for the provision of long-term residence, care, treatment, and services at the Defendant's facility, and pursuant to that agreement the Defendant had a duty to exercise ordinary care in the provision of care, treatment, and services to Ms. Washington. The Defendant failed to exercise reasonable care with respect to the care, treatment and services provided to Ms. Washington, and she sustained serious illness, injury, pain, suffering, and death as a result.

68.   In the wrongful acts and omissions described in detail above and in the insufficiency of care, treatment, and services outlined herein, the Defendant failed to provide the services that it promised to provide pursuant to the contract for services entered between the Defendant and the Plaintiff. The Defendant therefore breached the contract for services as set out herein.

69.  As a result of the foregoing, Plaintiff Ange Davis, in her individual capacity and in her capacity as the Administrator of the Estate of Janie Mae Washington, deceased, is entitled to recover all amounts paid to obtain services under the contract and all consequential damages arising there from.

## COUNT VI

### IMPUTED LIABILITY

70.  Plaintiffs re-allege and incorporate by reference their allegations in Paragraphs 1 through 17 as if fully set forth herein.

71.  All of Ms. Washington's injuries and damages were the direct result of the acts and omissions of the agents, servants, and employees of the Defendant, conducted within the course and scope of each individual's employment with the Defendant or Defendant's business entity health care providers.

72.  The Defendant business entities are therefore vicariously liable for the individual employee's and agent's acts and omissions, and for each individual officer, director, employee, agent, and servant's negligent acts and omissions, and the resultant injuries, death, and damages of Ms. Washington by application of the doctrine of respondeat superior. The Plaintiffs are therefore entitled to recover damages from the Defendant as set out below.

## COUNT VII

### WRONGFUL DEATH

73.     Plaintiffs re-allege and incorporate by reference their allegations in Paragraphs 1-
        17 as if fully set forth herein.

74.     As set out above, Ms. Washington sustained grievous illness, infection, suffered
        tremendously, and ultimately died as a direct result of the Defendant's acts and
        omissions in the provision of care, treatment, and services to her which constituted
        violations of federal and state law, professional negligence, simple negligence, and
        negligence per se.

75.     Ms. Washington is survived by her daughter, Ange Davis, the Plaintiff herein.

76.     As a result of the Defendant's violations of federal and state law, professional
        negligence, simple negligence, negligence per se, and Ms. Washington's resultant
        death, as set out in detail above, Plaintiff Ange Davis is entitled to recover damages
        against the Defendant for Ms. Washington's wrongful death in an amount equal to
        the full value of the life of the deceased.

## COUNT VII

## NEGLIGENT HIRING, RETENTION, TRAINING AND SUPERVISION AS TO ALL DEFENDANTS

77.     Plaintiffs re-allege and incorporate by reference their allegations in Paragraphs 1
        through 17 as if fully set forth herein.

78.     Defendant operates a long term care facility and is subject to the statutes, rules and
        regulations promulgated by the State of Georgia regarding the operation of a long
        term care facility.  Defendant must, at all times, comply with said statutes, rules
        and regulations.

79. Pursuant to the applicable statutes, rules and regulations, Defendant is required to hire, train, retain, and supervise a sufficient number of qualified staff to provide the necessary care, treatment and oversight for all residents at GLC including Janie Mae Washington.

80. Defendant failed to hire, train, retain, and supervise a sufficient number of qualified staff to provide the necessary care, treatment and oversight for all residents at GLC including Janie Mae Washington.

81. Defendant's failure to comply with the applicable statutes, rules and regulations, as alleged in the preceding paragraphs, was willful misconduct by Defendant.

82. Defendant's failure to comply with the applicable statutes, rules and regulations, as alleged in the preceding paragraphs, demonstrates a conscious indifference to the consequences of such failure.

83. As a proximate result of Defendant's failure to comply with the applicable statutes, rules and regulations, as alleged in the preceding paragraphs, Janie Mae Washington was neglected, suffered serious illness, injury, pain, suffering, and death as a result.

84. As a result of the Defendant's negligent hiring, retention, training, supervision, and the resultant damages and harm, the Plaintiffs are entitled to an award of damages as set out below.

This 2⁴ᵗʰ day of April, 2017.

SCHENK SMITH LLC

Robert L. Schenk II
Georgia Bar No. 107908
Attorney for the Plaintiff

1126 Ponce de Leon Ave NE
Atlanta, Georgia 30306
(678) 823-7678
rob@schenksmith.com

**EXHIBIT A**

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF SAN FRANCISCO                )

## AFFIDAVIT OF JOHN H. FULLERTON, MD, MRO, CMD, CFP, DABFE, DABFM, FACP, AGSF, FAAHPM, FASAFAM

COMES NOW, DR. JOHN H. FULLERTON, and after being duly sworn by the undersigned notary public, does hereby make the following Affidavit under oath:

1.    My name is Dr. John Fullerton.  I am over the age of twenty-one years, and I make this Affidavit based upon my own personal knowledge, as well as my own professional knowledge, education, training, and experience after my review of the materials and facts set forth and referenced below in Paragraph 6 of this Affidavit, for use in a potential civil action concerning the care given to Ms. Janie Mae Washington ("Ms. Washington") in the time-period on and around the dates of January of 2014 through January of 2016, while Ms. Washington was a resident at Golden Living Center in Tifton, Georgia ("GLC") nursing home facility, located at 1451 Newton Drive, Tifton, Georgia, 30083.

2.    I received my degree Bachelor of Science Degree in Biology from College of William & Mary, located in Williamsburg, Virginia, in 1980. I received my medical degree from the University of Miami Medical School, located in Miami, Florida, in 1985. I completed a Medical Internship at the California Pacific Medical Center, located in San Francisco, California, in 1986. I completed Medical Residency at the California Pacific Medical Center in 1988. I completed Chief Medical Residency at the California Pacific Medical Center in 1989. I am licensed to practice medicine in California and Florida. Attached

hereto as Exhibit 1 is my curriculum vitae, which is incorporated herein by reference and made a part hereof as if fully set forth herein.

3.    I have been Board Certified in Internal Medicine, Geriatrics, Hospice, & Palliative Medicine, and Addiction Medicine for many years. I maintain a Long-Term Care Medical Directorship Certification. I am Licensed as a Certified Medical Review Officer. I have been the Director of Geriatric, Palliative, Addiction, and MRO Testing at Dignity/St. Mary's Medical Center's Internal Medicine Residency Training Program. I have been Board Certified in Geriatrics with the American Board of Internal Medicine. I have been Board Certified with the American Board of Hospice & Palliative Medicine and Key National Faculty Lecturer for the Nascent Added Hospice Medical Director Board. I obtained an added certificate as a Hospice Management. I am certified by ABAM as a Board Certified Addiction Specialist.

4.    I have actual professional knowledge and experience in the treatment of residents of nursing homes and long-term care facilities, and I also have professional knowledge and experience in recommending and implementing wound treatment and care of residents of nursing homes and long-term care facilities.  I have held a certificate for Debridement Wound Treatment since 2008. I have diagnosed and treated nursing home residents in each of the last five years preceding the date of the signing of this Affidavit with sufficient frequency to establish an appropriate level of knowledge in the treatment and care of nursing home residents, specifically those suffering from decubitus ulcers, and rendering the treatments and interventions described in this Affidavit.  As a Board Certified Medical Doctor of Internal Medicine, Geriatrics, Hospice, & Palliative Medicine, I have regularly

provided care to nursing home residents since 2006.  Through my professional education, training, and experience in the field of medicine, I have become familiar with and am familiar with the standard of care ordinarily employed by nursing home personnel, including doctors and nurses, under similar conditions and like surrounding circumstances generally, as well as under similar conditions and like surrounding circumstances to those specifically described in this Affidavit regarding the care and treatment given to Ms. Washington.  I am competent to give the opinions contained in this Affidavit.

5.     The following is the standard of care ordinarily employed by healthcare professionals and healthcare providers who care for nursing home patients:

(a)     Nursing home staff must take appropriate measures to reduce the occurrence of decubitus ulcers, or when such injuries have already occurred, provide proper treatment.

(b)     Some residents are more at risk for developing decubitus ulcers than others. Risk factors for decubitus ulcers include the following:

a.   Immobility, confinement to wheelchairs, or limited ability to move without assistance;

b.   Incontinence;

c.   Diminished capacity or dementia;

d.   Deficit in sensory perception or the ability to respond to discomfort;

e.   Nursing home staff must be take preventative measures, including regular turning, repositioning, changing of bedding or clothing after soiling, and keeping the resident dry.

(c)     The appropriate precautions to be taken by the nursing home staff are dependent on the level of risk that each resident has for developing decubitus ulcers. The higher the risk, the more precautions that should be taken. Reasonable precautions include consistent repositioning, changing of bedding or clothing after soiling, keeping the resident dry, proper nutrition, and the use of devices like special mattresses or raises.

6.     The opinions expressed herein are based on my professional knowledge, education, training, and experience as a medical doctor, as well as my personal review and consideration of the following records and materials:

(a)     Ms. Washington's medical records from Tift Regional Medical Center from January through March 2012 and December 2015 through January 2016;

(b)     Ms. Washington's complete records from GLC;

(b)     Various photographs taken of Ms. Washington in 2015 by her daughter, Angie Davis;

(c)     Ms. Washington's certified death certificate;

(d)     Statement of Deficiencies for GLC from the Department of Health and Human Services Centers for Medicare and Medicaid Services from August 20th, 2015; and

(e)     The Affidavit of Charlotte Sheppard, BSN, RN, BC, WCC.

7.     It is my medical opinion, to a reasonable degree of medical certainty that GLC breached the standard of care in the care and treatment of Ms. Washington and that the breaches of the standard of care were the cause of tremendous pain and suffering to Ms. Washington, and the cause of her death. I define the Standard of Care as the level at which the average,

prudent provider in a given community would practice. It is how similarly qualified practitioners would have managed the patient's care under the same or similar circumstances.

8.    On or about January of 2011, Ms. Washington was admitted to GLC. At that time, she was a 73-year-old female that suffered from Alzheimer's Disease, end-stage renal disease, diabetes, hypertension, congestive heart failure, and anemia. As of 2014, Ms. Washington received nutrition via PEG tube with bolus feedings throughout the day and received dialysis treatment three times per week. Ms. Washington was unable to walk, could not roll over or reposition herself, was incontinent, and required assistance in all activities.

9.    On February 5th, 2014, Ms. Washington was admitted to Tift Regional Medical Center after suffering from a seizure. On February 14th, 2014, Tift Regional Medical Center noted "discoloration" of the sacrum. Upon return to GLC, GLC staff noted "some discolorations... on the sacrum." However, another GLC entry for February 14th, 2014, made at a later time, noted a Stage II pressure ulcer with a pink wound bed surrounding the area from a "previous healed wound."

10.   On February 16th, 2014, a skin care plan was put in place that included nutritional and hydration support, the use of a pressure reduction mattress, regular turning and repositioning, and routine skin assessments. Minimum Data Set (MDS) for Ms. Washington do not indicate skin impairment on April 9th,2014, May 27th, 2014, and June 11th 2014. Treatment to Ms. Washington's sacral area was discontinued on May 8th, 2014. However, wound noted on May 15th, 2015 as irritated and open with drainage.

11.  As of June 29th, 2016, GLC noted the sacral bed sore as Stage II. As of July 5th, 2014, GLC noted the sacral bed sore as Stage III. As of August 12th, 2014, Dr. Burton, a wound care physician, provided that repositioning and wound offloading must be "strictly" enforced.

12.  As of September 30th, 2014, the sacral bed sore was indicated as Stage IV. The sacral bed sore remained at Stage IV or Stage III until Ms. Washington's death on January 15th, 2016.

13.  It is my medical opinion, based on a reasonable degree of medical certainty that the administrator, nursing service, and staff at GLC breached the standard of care by failing to prevent, evaluate and attend to Ms. Washington's decubitus ulcer of the sacrum from February of 2014 through her death in January of 2016.

14.  It is my opinion that, to a reasonable degree of medical certainty, Ms. Washington suffered from a decubitus ulcer of the sacrum as a result of GLC's breach of the standard of care.

15.  It is my opinion that, to a reasonable degree of medical certainty, that the decubitus ulcer of the sacrum, to which Ms. Washington suffered consistently for nearly two years, is the proximate and direct cause of her suffering osteomyelitis and sepsis. It is my opinion, to a reasonable degree of medical certainty, that the sepsis resulting from the decubitus ulcer of the sacrum was the direct and proximate cause of Ms. Washington's death.

16.  It is my opinion that, to a reasonable degree of medical certainty, GLC and its employees, nurses, and staff, negligently departed from the standard of care and were negligent as described above in this Affidavit, and these departures from the standard of care

proximately caused the decubitus ulcers of the sacrum, and as a result, Ms. Washington's death.

17.    This Affidavit sets forth, in specification and not in limitation, at least one negligent act or omission claimed to exist and the factual basis for each such claim as required by O.C.G.A. § 9-11-9.1. It is not the purpose of this Affidavit to set forth each and every wrongful act or failure that did or may have occurred in this matter, and I reserve the right to offer or form an opinion in the future as to other negligent acts or omissions and the factual bases for each such claim. It is my understanding that this Affidavit will be used in connection with any potential civil action by the Estate of Ms. Washington, and this Affidavit may be used for any and all purposes allowed by law. Further affiant sayeth not.

This **Z0** day of **October** , 2016.

By: _____
JOHN FULLERTON, MD

Sworn to and subscribed
before me this **20** day of October, 2016.

_____
Notary Public

MINOO PARSAZADEH
Commission # 2144598
Notary Public - California
San Francisco County
My Comm. Expires Feb 28, 2020

*Curriculum Vitae*



John H. Fullerton, MD, MRO, CMD, CFP, DABFE, DABFM, FACP, AGSF, FAAHPM

B.C.: General Internal Medicine, Geriatrics, Hospice & Palliative Medicine, Addiction Medicine, Long-Term Care Medical Directorship Certification(s), Clinical Forensic Medicine, Medical Toxicology, and Licensed as a Certified Medical Review Officer [MRO]

Dignity/CHW: St. Mary's Medical Center (SF, CA)
Director of Geriatric & Palliative Education
Co-Director: Academic Pain Management & Addiction

Associate Professor of Clinical Medicine/Geriatrics: UCSF & Touro

Osteopathic [D.O.] Psychiatry Residency Faculty: Sutter/CPMC

Assistant Professor of Clinical Medicine:
USC [KECK] & Yale University School(s) of Medicine

CD/ED Medical Director, Long Term Care, Independent Living, Hos[pice], Assisted Living, Secured Dementia [Psycho-Neuro-Behavioral Unit(s)] & Home Care Certified Medical Director

**Hampton Health, LTD ™**
Founder, President, & Chief Medical Officer

SF Office(s):
1700 California St.
Suite #470
San Francisco, CA
94109

South Marin Office(s):
Aegis of Corte Madera
5555 Paradise Dr.
Second [2nd] Floor
Corte Madera, CA
94925

Mid-Marin Office(s):
Elder Care Alliance
[ECA]/Alma Via of San Rafael
515 Northgate Drive
Suite: #101
San Rafael, CA 94903

[O] 415.302.9488
[F] 415.376.5820

## MEDICAL LICENSURE:

California Medical License #G 59000 - Current (08/86-Present);
Florida Medical License #ME77278 - Current (01/05/99-Present);
Medical Insurance Exchange of California (MIEC- $1M/$3M) -(04/91-Present);
DEA License-Current (1986-Present);
Medical Review Officer License #11-09354 [Medical Review Officer Certification Counsel (MROCC)]-Licensed as MRO-2011-Present.

## BOARD CERTIFICATIONS/CERTIFICATES OF ADDED QUALIFICATIONS:

- American College of Medical Toxicology/Faculty in the American Academy of Alcohol Abuse;
- American Medical Directors Association (AMDA) – Certified (CMD:12/04-Present; Re-cert: 06/10), On B.O.D.'s & President-Elect and Co-Chair of Public Policy Committee of AMDA [CA Chapter-05/14-05/16] and National AMDA Public Policy Committee in Wash. D.C. [2010-Present];

1

- Director of Geriatric, Palliative, Addiction, & MRO Testing at Dignity/St. Mary's Medical Center's Internal Medicine [IM] Residency Training Program [SF, CA];
- American Board of Internal Medicine (ABIM): (09/88-Present);
- Forensic Examiners (ACFEI)-Certified Forensic Physician (CFP): (2006-Present); Diplomate American Board of Forensic Examiners (DABFE): {07/14 – Present};
- American Board of Internal Medicine (ABIM)-Board Certified in Geriatrics (04/94-Present);
- American Board of Hospice & Palliative Medicine (ABHPM) and Key National Faculty Lecturer for the Nascent Added Hospice Medical Director Board – Board Certified (01/06-Present);
- American Academy of Home Care Physicians (AAHCP)-Certified (11/03-& Extended to Present);
- Advanced Cardiac Life Support [ACLS] Instructor, early 1990's-including Chief Emergency Response Officer at King Khaled Hospital in Ridayh, Kingdom of Saudi Arabia re: Nerve Gas Chemical Weapons Counter-Measures (with an emphasis re: the evaluation and treatment of widespread Cyanide Poisonings/Injuries, among other regional "Nerve Gas Chemical/Biological Weapons");
- Medical Review Officer License #11-09354 [Medical Review Officer Certification Counsel (MROCC)]-Licensed as MRO-2011-Present;
- American Board of Addiction Medicine (ABAM)-Board Certified (12/10, MOC, Present); Public Policy Committee for the CA Chapter of ASAM (CSAM);
- Co-Director of Academic Addiction Medicine/Pain Management Services at proposed UCSF Community Hospital Program(s)/St. Mary's Medical Center [SF, CA] collaboration (and currently Key Faculty at St. Mary's Medical Center's Residency Program-SF, CA);
- American Society of Addiction Medicine (ASAM): Buprenorphine (Suboxone) RX-Certificate of Added Qualifications (CAQ);
- Certificate in Advanced Surgical (Deep) Wound Debridement (09/11).


## *PRESENT ACADEMIC RANK AND POSITION:*

- Corporate MRO for Hampton Health re: Employee Health/Occupational Exposure Responsibilities for multiple Health Care Facilities SF Bay Area;
- Certified Medical Director: Chemical Dependency/Eating Disorder (CD/ED) Residential Care Units-New Dawn [SF, CA] 2010-2013; appointed to the Public Policy Committee of CSAM/Leadership Council: 02/13-Present;
- California Coalition for Culture Change (CCCC): Board of Directors [Judy Citko, Esq-Chair]-09/12-Present;
- Urgent Care Director: Kaiser-Permanente of San Rafael (1987-1989), St. Mary's Medical Center [Sister Mary Phillipa Healthcare Center: SMPHC] (2007-Present), & Aegis of Corte Madera: 2003-Present;
- St. Mary's Medical Center: Director of Geriatric & Palliative Education & Training, Co-Director of the Academic Pain Referral & Addiction Clinic(s), Key Clinical Faculty, Founder/Director of Hospital-Based Geriatric Ambulatory Care Clinic, Ethics Committee, P & T Committee, Physician Wellbeing Committee, Controlled Substances Committee, & Intern/Resident Selection Committee for the Internal Medicine Residency Program (2007-Present);
- Yale University Medical School: Assistant Professor of Clinical Medicine (04/06-Present);
- UCSF Medical School: Associate Professor of Clinical Medicine (05/13-P);

2

- USC Keck School of Medicine-Adjunct Assistant Professor of Clinical Medicine-Dept. of Family Medicine (June 2013-Present);
- Stanford School of Medicine: H/O Clinical Preceptor (Primary Care Assoc's Program: 2001- 2010);
- Clinical Instructor/Affiliate Site(s) in Geriatrics: Samuel Merritt University [PA-S Program, Oakland, CA-01/13-P]; "Masters Physician Assistant (PA) Program" in the East Bay/Oakland;
- Touro University Osteopathic Medical School [D.O.]: Adjunct Asst. Professor of Geriatrics;
- Touro University Osteopathic Medical School [D.O.]: Adjunct Associate Professor of Internal Medicine;
- SUTTER/CPMC: PSYCHIATRY RESIDENCY FACULTY;
- American Academy of Family Physicians (AAFP): Clinical Educator Certificate ("Active Teacher in Family Medicine" 2002- Present): San Francisco Free Clinic (SFFC);
- Certified Medical Director (and Certified Hospice Medical Director) for multiple Sub-Acute Rehab's, Skilled Nursing Facilities (SNF's), Assisted Living (ALF's) & Independent Living ILF's) Facilities (with and without Dementia Care), Secured Neuro-Psycho-Behavioral Units, as well as a history of directing a medically supported Adult Day Care Facility(s) in the SF Bay Area;
- Elected to position of Vice President (VP)/Upcoming President-Elect 05/12-05/14 Term for CA Chapter of AMDA (CALTCM), B.O.D.'s, & Co-Chair of the Policy & Professional Services Committee; appointed to the national AMDA's Public Policy Committee in Washington DC;
- Certified Medical Director of a large regional Tri-County Hospice [Hospice by the Bay]: 01/13- Present; appointed to National Faculty Lecturer for Early Hospice Medical Director Certification;
- H/O Certified Medical Director for East Bay-Based-Blize Home Care: Medical Director of SF County & Medical Director of Marin County Territories [11/12-06/13].

## *EDUCATIONAL EXPERIENCE:*

**College of William & Mary**
Williamsburg, VA
B.S., Biology: 05/80 (Graduated with Honors in Biology)

**University of Miami Medical School**
Miami, FL [Graduated with Medical Degree (MD): 05/85]

## *POST-DOCTORAL TRAINING:*

**Medical Internship: 06-85/06-86**
California Pacific Medical Center (formerly Pacific Presbyterian Hospital)
PO Box 7999/Clay @ Buchanan Street
San Francisco, California 94115
Program Director: John Gamble, MD

**Medical Residency: 06/86-06/88**
California Pacific Medical Center (formerly Pacific Presbyterian Hospital)
PO Box 7999/Clay @ Buchanan Street
San Francisco, California 94115
Program Director: John Gamble, MD

3

**Chief Medical Residency: 06/88-06/89**
California Pacific Medical Center (formerly Pacific Presbyterian Hospital)
PO Box 7999/Clay @ Buchanan Street
San Francisco, California 94115(Program Director: John Gamble, MD/Keith Martin, MPH, MD, FACP)

*OTHER:*

**CPR (BCLS) and/or Advanced Cardiac Life Support (ACLS)**-certified (06/84-10/13)
**ACLS Instructor – 1990, 1991**
**Code Blue Team Leader [over 9 ½ years]**-06/88-10/89 & 04/91-07/98

*AWARDS/HONORS:*

- **Resident of the Year: 1988;**
  Pacific Presbyterian Hospital
  Clay @ Buchanan St. San Francisco, California 94115

- **Chief Medical Resident: 06/88-06/89;**
  Pacific Presbyterian Hospital Clay @ Buchanan St. San Francisco, California 94115

- **"Dr. John Fullerton and Dr. Patrick Tekeli Day in San Francisco": 12/14/94**
  Awarded for body of urban under-served hospital-based work in SF, including distinguished service in areas of General Internal Medicine, Geriatrics, HIV/AIDS, Acute Rehabilitation, In-Patient Addiction/Detox Medicine, Hospice & end-of-life (EOL) care, and Transplant Medicine;

- **"2003 California Physician of the year" (NRCC-Congressional);**

- **"2004 Pioneer of Healthcare Reform" (NRCC-Congressional);**

- **"Consumer's Report 2007, 2008, 2009, 2010, & 2011 Edition(s): Guide to America's Top Physicians";**

- **"2006 Organization Hero": SFFC: University of California at Berkeley School of Public Health Global Organizational Hero Award: "2006 Berkeley International Public Health Heroes";**

- **Certificate of Appreciation from Senator Barbara Boxer (March 17, 2006);**

4

- **Certificate of Recognition by Senator Jackie Spier (March 17, 2006);**

- **Certificate of Recognition by 13th District Assemblyman Mark Leno (March 17, 2006);**

- **"2013: THE CALIFORNIA PRIZE": USF honored the San Francisco Free Clinic [SFFC] with Statewide Prize-One-of-a-Kind Health Care Center to Receive Prestigious Service Award.** As the recipient of this prize dedicated to the organization selected in keeping with their long tradition of choosing organizations that focus on Service and the Common Good. As a byproduct of focusing on community wellness, the SFFC provides complimentary, accessible medical treatment to those without insurance, while also advancing the field of primary care by providing educational opportunities for future medical practitioners.

- **Yale-Jefferson Award (2013)-as Core Clinical Faculty at the San Francisco Free Clinic (SFFC): awarded for body of under-served work and training over a >15 year period.**

## KEY CLINICAL FACULTY, CORE FACULTY POSITIONS, ACUTE HOSPITAL PRIVILEGES, AND RESEARCH DIRECTOR [PI] POSITIONS:

- **Certified Hospice Medical Director of 4 county > 400 patient Regional Hospice System [Hospice by the Bay-HBTB]-many with underlying Alzheimer's Disease**

- **Medical Director/Primary Attending: New Dawn Chemical Dependency (CD) and Eating Disorders (ED) Residential Treatment Centers [2010-June, 2013]**

  Dr. Fullerton was appointed the **Medical Director & Attending of Record for the New Dawn Eating Disorder/Chemical Disorder Residential Care Unit in SF** (as part of a larger ED/CD state-of-the-art approach to Residential Management of these singly or co-occurring Addiction Medicine disorders).

- **St. Mary's Medical Center (SMMC)**
  **Department of Medicine: Medical Staff (including Addiction Medicine) Active Privileges, Ethics Committee, Physician Wellness Committee, Pharmacy and Therapeutics Committee, Intern/Resident Selection Committee, Controlled Substances Committee. Graduate Medical Education [GME] Dept.: Director of Geriatric & Palliative Education, Co-Director of Academic Referral Pain Clinic and Addiction Clinic, Director of Ambulatory Geriatric and Palliative Clinic(s), & Clinical Faculty for the Urgent Care Clinic for the Internal Medicine Residency Program (& Key Medical Faculty):**
  2235 Hayes Street [Fourth Floor]
  San Francisco, California 94117

- **Core Teaching Attending in General Internal Medicine Core Rotation [#103] & Family/Community Medicine (FCM) [#110] at:**

5

## IN THE STATE COURT OF TIFT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **ANGE DAVIS, individually and as** | ) |
| **Administrator of THE ESTATE OF** | ) |
| **JANIE MAE WASHINGTON, deceased** | ) |
| | ) |
| | ) **CIVIL ACT. FILE NO.:** |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **GGNSC ADMINISTRATIVE SERVICES LLC** | ) |
| **d/b/a GOLDEN LIVING CENTER** | ) |
| **TIFTON** | ) |
| | ) |
| **Defendant.** | ) |

### PLAINTIFF'S RULE 5.2 CERTIFICATE

I hereby certify that I have served a copy of Plaintiffs' First Set of Continuing

Interrogatories, First Request for Production of Documents, and First Request for Admissions, by

personal service on the Defendant at the address as follows:

CSC of Cobb County
ATTN: GGNSC Administrative Services, LLC
192 Anderson Street, SE, Suite 125
Marietta, GA 30060

This 24th day of April, 2017.

SCHENK SMITH LLC

ROBERT L. SCHENK II
Georgia Bar No. 107908
Attorney for Plaintiff

1126 Ponce de Leon Ave NE
Atlanta, GA 30306
(678) 823-7678
rob@schenksmith.com

**IN THE STATE COURT OF TIFT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| ANGE DAVIS, individually and as ) | |
| **Administrator of THE ESTATE OF** ) | |
| **JANIE MAE WASHINGTON, deceased** ) | |
| ) | **CIVIL ACT. FILE NO.:** |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | |
| **GGNSC ADMINISTRATIVE SERVICES LLC** ) | |
| **d/b/a GOLDEN LIVING CENTER** ) | |
| **TIFTON** ) | |
| ) | |
| **Defendant.** ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of Plaintiff's RULE 5.2 CERTIFICATE

upon the Defendant by personal service at the following address:

CSC of Cobb County
ATTN: GGNSC Administrative Services, LLC
192 Anderson Street, SE, Suite 125
Marietta, GA 30060

This 24ᵗʰ day of April, 2017.

SCHENK SMITH LLC

_____

ROBERT L. SCHENK II
Georgia Bar No. 107908
Attorney for Plaintiff

1126 Ponce de Leon Ave NE
Atlanta, GA 30306
(678) 823-7678
rob@schenksmith.com

65100

Civil Action No. 2017 CT 040

Date Filed 4-26-2017

State Court ☑
Magistrate Court ☐
Georgia, DeKalb County

ANGE DAVIS, INDIVIDUALLY AND
AS ADMINISTRATOR OF THE
ESTATE OF JAVIR MAR WASHINGTON

Plaintiff

Attorney's Address
┌ SCHENK SMITH LLC
ATTN: ROB SCHENK
1126 PONCE DE LEON AVE
ATLANTA, GA 30306 ┘

SERVE vs

GGNSC ADMINISTRATIVE
SERVICES LLC D/B/A GLC - TIFTON

Defendant

Name and Address of Party to be Served

CSC OF COBB COUNTY INC

ATTN: GGNSC ADMIN SERVICES LLC

192 ANDERSON ST SE STE 125

MARIETTA, GA 30060

Garnishee

### MARSHAL/SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant_____ personally with a copy of the within action and summons.

**RESIDENCE** ☐ I have this day served the defendant_____ by leaving a copy of the action and summons at (his/her) dwelling house or usual place of abode with a person of suitable age and discretion residing therein; delivered same into the hands of _____ described as follows: age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑ Served the defendant _CSC of Cobb County_ by leaving a copy of the within action and summons with _Terri Thompson_ in charge of the office and place of doing business of said Corporation in this County 5/100

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant_____ not to be found in the jurisdiction of this Court.

Terri Thompson

This 15th day of 05 , 20 17 .                    05/15/17

Deputy                    SUCOF.

SHERIFF DOCKET_____ PAGE_____          marshalservice/2007



COPY

## IN THE STATE COURT OF TIFT COUNTY
## STATE OF GEORGIA

ANGE DAVIS, individually and as )
Administrator of THE ESTATE OF )
JANIE MAE WASHINGTON, deceased )
                           )
                           )      CIV. ACT, FILE NO.: 2017CT040
      Plaintiffs, )
                           )
v.                        )
                           )
GGNSC ADMINISTRATIVE SERVICES LLC )
d/b/a GOLDEN LIVING CENTER )
TIFTON                      )
                           )
      Defendant. )

## NOTICE OF FILING PROOF OF SERVICE

Comes Now, Plaintiff ANGE DAVIS, individually and as Administrator of the Estate of

Janie Mae Washington (the "Plaintiff"), and hereby gives "), and hereby gives notice of the filing

of Plaintiff's NOTICE OF FILING PROOF OF SERVICE.

The Plaintiff gives notice that the GGNSC ADMINISTRATIVE SERVICES LLC d/b/a

GOLDEN LIVING CENTER TIFTON (the "Defendant") was served via personal service of the

Complaint for Damages, First Set of Continuing Interrogatories, First Request for Admissions, and

First Request for Production of Documents, on May 15th, 2017 by the Cobb County Sheriff's

Office, as detailed in the Entry of Service attached to this notice as **Exhibit A.**

This ____ day of May, 2017.

                                   SCHENK SMITH LLC

                                   _____

                                   ROBERT L. SCHENK II
                                   Attorney for Plaintiff
                                   Ga. Bar No.: 107908

1126 Ponce de Leon Ave
Atlanta, GA 30306
Tel: (678) 823-7678
rob@schenksmith.com

EXHIBIT A

A 803:E7
GS1CO

Civil Action No. 2017 CT 040

Date Filed 4-26-2017

State Court ☑
Magistrate Court ☐
Georgia, _____ County

Attorney's Address
⌐ SCHENK SMITH LLC
 ATTN: ROB SCHENK
1126 PONCE DE LEON AVE
ATLANTA, GA 30306 ⌐

ANGE DANIS, INDIVIDUALLY AND
AS ADMINISTRATOR OF THE
ESTATE OF JAVIR MAE WASHINGTON

**KEEP**

Plaintiff

Name and Address of Party to be Served

CSC OF COBB COUNTY INC

ATTN: GGNSC ADMIN SERVICES LLC

192 ANDERSON ST, SE STE 125

MARIETTA, GA 30060

GGNSC ADMINSTRATIVE

SERVICES LLC D/b/a GLC -TIPTON

Defendant

Garnishee

## MARSHAL/SHERIFF'S ENTRY OF SERVICE

**PERSONAL ☐** I have this day served the defendant_____ personally with a copy of the within action and summons.

**RESIDENCE ☐** I have this day served the defendant_____ by leaving a copy of the action and summons at (his/her) dwelling house or usual place of abode with a person of suitable age and discretion residing therein; delivered same into the hands of _____ described as follows: age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION ☑** Served the defendant CSC of Cobb County by leaving a copy of the within action and summons with Terri Thompson in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL ☐** I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST ☐** Diligent search made and defendant_____ not to be found in the jurisdiction of this Court.

This 15 day of _____ OS _____, 20 17

Deputy
Cobb County Sheriff's Office      SVCO
185 Roswell Street   marshalservice/2007   Ø
Marietta, Ga. 30090-9650

SHERIFF DOCKET_____ PAGE_____

## IN THE STATE COURT OF TIFT COUNTY
## STATE OF GEORGIA

ANGE DAVIS, individually and as )
Administrator of THE ESTATE OF )
JANIE MAE WASHINGTON, deceased )
                                )
                                )    **CIV. ACT. FILE NO.: 2017CT040**
       Plaintiffs,           )
                                )
v.                            )
                                )
GGNSC ADMINISTRATIVE SERVICES LLC )
d/b/a GOLDEN LIVING CENTER )
TIFTON )
                                )
       Defendant.          )

### CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of Plaintiff's Notice of Filing upon all

parties to this matter by placing the same in the U.S. mail addressed as follows:

CSC of Cobb County, Inc.
ATTN: GGNSC ADMIN SERVICES LLC
192 Anderson Street, SE Suite 125
Marietta, GA 30060

      This 23 day of May, 2017.

                               SCHENK SMITH LLC

                                 Robert Schenk
                                 Georgia Bar No. 107908
                                 Attorney for Plaintiff

1126 Ponce de Leon Ave NE
Atlanta, GA 30306
(678) 823-7678
rob@schenksmith.com



SCHENK SMITH
T R I A L   A T T O R N E Y S

1126 Ponce de Leon Ave NE
Atlanta, GA    30306



CSC OF Cass County, INC.
ATTN: Golden Living Center
GGNSC Admin Services
192 Anderson Street, SE
Suite 125
Marietta, GA 30060

3006081930 C028

## IN THE STATE COURT OF TIFT COUNTY
## STATE OF GEORGIA

ANGE DAVIS, individually and as )
Administrator of THE ESTATE OF )
JANIE MAE WASHINGTON, deceased )
                            )
                            )     CIV. ACT. FILE NO.: 2017CT040
     Plaintiffs,         )
                            )
v.                         )
                            )
GGNSC ADMINISTRATIVE SERVICES LLC )
d/b/a GOLDEN LIVING CENTER )
TIFTON                         )
                            )
     Defendant.       )

### CERTIFICATE OF SERVICE

    I hereby certify that I have this day served a copy of Plaintiff's Notice of Filing upon all

parties to this matter by placing the same in the U.S. mail addressed as follows:

CSC of Cobb County, Inc.
ATTN: GGNSC ADMIN SERVICES LLC
192 Anderson Street, SE Suite 125
Marietta, GA 30060

    This 2ᵗʰ day of May, 2017.

                                  SCHENK SMITH LLC

                                  Robert Schenk
                                  Georgia Bar No. 107908
                                  Attorney for Plaintiff

1126 Ponce de Leon Ave NE
Atlanta, GA 30306
(678) 823-7678
rob@schenksmith.com

FILED IN OFFICE

MAY 26 2017

CLAY PATE ___ COURT
                                DC

EFILED IN OFFICE
CLERK OF STATE COURT
TIFT COUNTY, GEORGIA

**2017CT040**

HERBERT W BENSON
JUN 07, 2017 02:53 PM

Clay Pate, Clerk
Tift County, Georgia

## IN THE STATE COURT OF TIFT COUNTY
## STATE OF GEORGIA

ANGE DAVIS, individually and as
Administrator of THE ESTATE OF JANIE
MAE WASHINGTON, deceased,

        Plaintiffs,

v.

GGNSC ADMINISTRATIVE SERVICES
LLC d/b/a GOLDEN LIVING CENTER
TIFTON,

        Defendants.

**CIVIL ACTION**

**FILE NO.  2017CT040**

### DEFENDANT GGNSC ADMINISTRATIVE SERVICES LLC IMPROPERLY IDENTIFIED AS d/b/a GOLDEN LIVING CENTER TIFTON'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

COMES NOW GGNSC Administrative Services LLC improperly identified as a/b/a Golden Living Center Tifton (hereinafter "Defendant"), by and through its undersigned counsel of record and files this Answer to Plaintiff's Complaint for Damages showing the Court as follows:

### FIRST DEFENSE

Plaintiff's Complaint fails to state a claim against this Defendant upon which relief can be granted.

### SECOND DEFENSE

This Defendant is an improper party.

### THIRD DEFENSE

This Defendant respectfully asserts that this Court lacks subject matter jurisdiction over this entity.

### FOURTH DEFENSE

This Defendant respectfully asserts that this Court lacks jurisdiction over this entity.

### FIFTH DEFENSE

Venue is improper as to this Defendant.

### SIXTH DEFENSE

No act or omission of this Defendant proximately caused or contributed to any injury or damages which the Plaintiff may have suffered, and Plaintiff is not entitled to any recovery whatsoever against this Defendant. This Defendant says also that, even if it was negligent in the manner set out and charged in the Complaint, which alleged negligence is expressly denied, the negligence of Leonard Handy was equal to or greater than any negligence charged against this Defendant in such Complaint and the consequences of such negligence, if any in fact existed, could have been avoided had Mr. Handy exercised ordinary care.

### SEVENTH DEFENSE

Any loss or damage allegedly suffered by Plaintiff, if there be any, was not the direct or proximate result of any act or omission of this Defendant, or those acting on its behalf.

### EIGHTH DEFENSE

The sole and proximate cause of Plaintiff's damages, if there be any, was the negligence of a person or entity for whose acts or omissions of this Defendant is in no way liable.

### NINTH DEFENSE

Any loss or damage allegedly suffered by Plaintiff, if there be any, was the direct and proximate result of the acts or omissions of other persons or entities for which this Defendant is not liable.

2

## TENTH DEFENSE

Any loss or damage allegedly suffered by Plaintiff, if there be any, was a direct and proximate result of the superseding and intervening acts of other persons or entities, for whom this Defendant is not liable.

## ELEVENTH DEFENSE

This Defendant is not liable because no tortious acts or omissions on its part proximately caused or proximately contributed to cause the injuries alleged by Plaintiff.

## TWELFTH DEFENSE

Plaintiff's Complaint does not comply with the requirements of the O.C.G.A. §§ 9-11-9.1 and 9-11-9.2 and as such should be dismissed.

## THIRTEENTH DEFENSE

This Defendant did not breach any duty of care owed to Janie Mae Washington.

## FOURTEENTH DEFENSE

Plaintiff's Complaint is or may be barred by the applicable statute of limitations.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

## SIXTEENTH DEFENSE

Plaintiff's claims are barred to the extent that she lacks standing to bring this action on behalf of Janie Mae Washington and/or is not a real party in interest.

## SEVENTEENTH DEFENSE

Plaintiff's Complaint, to the extent it seeks any recovery of punitive damages, violates this Defendant's right to protection from excess fines as provided in the Eighth Amendment to the United States Constitution and Article I, Section I, Paragraph XVII of the Constitution of the

State of Georgia, rendering the statute invalid on its face to support a claim or recovery of punitive damages.

## EIGHTEENTH DEFENSE

Plaintiff's Complaint, to the extent it seeks any recovery of punitive damages, violates this Defendant's rights to substantive due process as provided in the Fifth and Fourteenth Amendments to the United States Constitution as well as Article I, Section I, Paragraph I of the Constitution of the State of Georgia, rendering the statute invalid on its face to support a claim or recovery of punitive damages.

## NINETEENTH DEFENSE

Plaintiff's claim for punitive damages is barred by the double jeopardy clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment and as set forth in the corresponding provisions of the Constitution of the State of Georgia.

## TWENTIETH DEFENSE

Official Code of Georgia Annotated § 51-12-5.1 is contrary to the Constitution of the United States and the Constitution of the State of Georgia and is void inasmuch as it denies this Defendant equal protection under the law by providing fewer protections for civil litigants than the criminal law provides to persons accused of violation of criminal statutes permitting imposition of monetary fines.  (U.S. Constitution, Article XIV; Georgia Constitution, Article I, Section II).

4

### TWENTY-FIRST DEFENSE

In the event any punitive damages are awarded to Plaintiff in this action (to which this Defendant denies Plaintiff is entitled), the amount of such damages are capped at $250,000 by Georgia law.

### TWENTY-SECOND DEFENSE

Plaintiff's Complaint is subject to dismissal due to an Arbitration Agreement signed on or about January 4, 2011. Therefore this Defendant pleads the defense of arbitration.

### TWENTY-THIRD DEFENSE

This Defendant incorporates all affirmative defenses pending further investigation and discovery.

### TWENTY-FOURTH DEFENSE

To the extent as may be shown by the evidence through discovery, Defendant avers the affirmative defenses of assumption of risk, accord and satisfaction, failure to mitigate, release, collateral source recovery, judicial estoppel, contributory negligence, comparative negligence, discharge in bankruptcy, laches, statute of limitations, waiver, intervening and supervening cause, and to the extent Plaintiff is not the proper party of interest. Defendant does not waive any available affirmative defenses that are reasonably unknown to it or are unavailable at this time but may arise through discovery, amendment of pleading, or subsequent filing.

### TWENTY-FIFTH DEFENSE

This Defendant hereby responds to the individual paragraphs of Plaintiff's Complaint as follows:

1.

Defendant denies the allegations in paragraph 1 of the Complaint.

5

## JURISDICTION AND VENUE

2.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2, and hence, can neither admit nor deny the same.

3.

Defendant admits it is a limited liability corporation formed under the law of Delaware with its principal place of business in Plano, Texas and that its registered agent is CSC of Cobb County, Inc., 192 Anderson Street SE, Suite 125, Cobb County, Marietta, Georgia, 30060. Defendant denies the remainder of paragraph 3.

4.

Defendant denies the allegations in paragraph 4 of the Complaint.

## PARTIES

5.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5.  To the extent Plaintiff infers any negligence or wrongdoing by this Defendant, said allegations are denied.

6.

Defendant denies the allegations in paragraph 6 of the Complaint.

## FACTS

7.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of paragraph 7, and hence, can neither admit nor deny the same.

8.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8, and hence, can neither admit nor deny the same.

9.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9, and hence, can neither admit nor deny the same.

10.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10, and hence, can neither admit nor deny the same.

11.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11, and hence, can neither admit nor deny the same.

12.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12, and hence, can neither admit nor deny the same.

13.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13, and hence, can neither admit nor deny the same.

14.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14.  To the extent Plaintiff infers any negligence or wrongdoing by this Defendant, said allegations are denied.

15.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15.  To the extent Plaintiff infers any negligence or wrongdoing by this Defendant, allegations are denied.

16.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16, and hence, can neither admit nor deny the same.

17.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17, and hence, can neither admit nor deny the same.

## COUNT I

## NEGLIGENCE PER SE BASED UPON VIOLATION OF REQUIREMENTS FOR LONG-TERM CARE FACILITIES AT 42 CFR § 483.1 et seq.

18.

This Defendant restates and reincorporates paragraphs 1-17 as if fully set forth herein verbatim.

8

19.

Defendant denies the allegations in paragraph 19 of the Complaint.

20.

Responding to paragraph 20, Defendant states that the regulations contained at 42 USCA § 1395i-3 and its subparts speak for themselves.  To the extent Plaintiff infers any negligence or wrongdoing by this Defendant, said allegations are denied.

21.

Defendant denies the allegations in paragraph 21 of the Complaint as stated.

22.

Defendant denies the allegations in paragraph 22 and all of its subparts of the Complaint.

23.

Defendant denies the allegations in paragraph 23 of the Complaint.

24.

Defendant denies the allegations in paragraph 24 of the Complaint.

25.

Defendant denies the allegations in paragraph 25 of the Complaint.

## COUNT II

### VIOLATION OF REQUIREMENTS OF THE GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CASE FACILITIES AT OCGA § 31-8-100 et seq. AS TO ALL DEFENDANTS

26.

This Defendant restates and reincorporates paragraphs 1-25 as if fully set forth herein verbatim.

9

27.

Responding to paragraph 27, Defendant states OCGA § 31-8-102(3) speaks for itself. Defendant denies the remaining allegations contained in paragraph 27.

28.

Responding to paragraph 28, Defendant states OCGA § 31-8-100 speaks for themselves. Defendant denies the remaining allegations contained in paragraph 28.

29.

Responding to paragraph 29, Defendant states the Ga. Comp. R. & Regs. speak for themselves.  Defendant denies the remaining allegations contained in paragraph 29.

30.

Defendant denies the allegations in paragraph 30 of the Complaint.

31.

Defendant denies the allegations in paragraph 31 of the Complaint.

32.

Defendant denies the allegations in paragraph 32 of the Complaint.

33.

Defendant denies the allegations in paragraph 33 of the Complaint.

34.

Defendant denies the allegations in paragraph 34 of the Complaint.

35.

Defendant denies the allegations in paragraph 35 of the Complaint.

36.

Defendant denies the allegations in paragraph 36 of the Complaint.

37.

Defendant denies the allegations in paragraph 37 of the Complaint.

38.

Defendant denies the allegations in paragraph 38 of the Complaint.

39.

Defendant denies the allegations in paragraph 39 of the Complaint.

40.

Defendant denies the allegations in paragraph 40 of the Complaint.

41.

Defendant denies the allegations in paragraph 41 of the Complaint.

## COUNT III

### GENERAL NEGLIGENCE

42.

This Defendant restates and reincorporates paragraphs 1-25 as if fully set forth herein verbatim.

43.

Defendant denies the allegations in paragraph 43 of the Complaint.

44.

Defendant denies the allegations in paragraph 44 of the Complaint.

45.

Defendant denies the allegations in paragraph 45 of the Complaint.

46.

Defendant denies the allegations in paragraph 46 of the Complaint.

47.

Defendant denies the allegations in paragraph 47 of the Complaint.

48.

Defendant denies the allegations in paragraph 48 of the Complaint.

49.

Defendant denies the allegations in paragraph 49 of the Complaint.

50.

Defendant denies the allegations in paragraph 50 of the Complaint.

## COUNT IV

## PROFESSIONAL NEGLIGENCE

51.

This Defendant restates and reincorporates paragraphs 1-50 as if fully set forth herein verbatim.

52.

Defendant denies the allegations in paragraph 52 of the Complaint.

53.

Defendant admits that the affidavit and CV of Dr. John Fullerton is attached to the Complaint, but denies it is sufficient under OCGA § 9-11-9.1.

54.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54, and hence, can neither admit nor deny the

12

same. Defendant further responds that Dr. Fullerton's affidavit is not sufficient under OCGA § 9-11-9.1.

55.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55, and hence, can neither admit nor deny the same. Defendant further responds that Dr. Fullerton's affidavit is not sufficient under OCGA § 9-11-9.1.

56.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56, and hence, can neither admit nor deny the same. Defendant further responds that Dr. Fullerton's affidavit is not sufficient under OCGA § 9-11-9.1.

57.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57, and hence, can neither admit nor deny the same. Defendant further responds that Dr. Fullerton's affidavit is not sufficient under OCGA § 9-11-9.1.

58.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58, and hence, can neither admit nor deny the same. Defendant further responds that Dr. Fullerton's affidavit is not sufficient under OCGA § 9-11-9.1.

59.

Defendant denies the allegations in paragraph 59 set forth an accurate statement of the Standard of Care in Georgia and denies the remaining allegations in paragraph 59.

60.

Defendant denies the allegations in paragraph 60 set forth an accurate statement of the Standard of Care in Georgia and denies the remaining allegations in paragraph 60.

61.

Defendant denies the allegations in paragraph 61 set forth an accurate statement of the Standard of Care in Georgia and denies the remaining allegations in paragraph 61.

62.

Defendant denies the allegations in paragraph 62 set forth an accurate statement of the Standard of Care in Georgia and denies the remaining allegations in paragraph 62.

63.

Defendant denies the allegations in paragraph 63 set forth an accurate statement of the Standard of Care in Georgia and denies the remaining allegations in paragraph 63.

64.

Defendant denies the allegations in paragraph 64 of the Complaint.

65.

Defendant denies the allegations in paragraph 65 of the Complaint.

## COUNT V

## BREACH OF CONTRACT

66.

This Defendant restates and reincorporates paragraphs 1-65 as if fully set forth herein verbatim.

67.

Defendant denies the allegations in paragraph 67 of the Complaint as stated.

68.

Defendant denies the allegations in paragraph 68 of the Complaint.

69.

Defendant denies the allegations in paragraph 69 of the Complaint.

## COUNT VI

## IMPUTED LIABILITY

70.

This Defendant restates and reincorporates paragraphs 1-69 as if fully set forth herein verbatim.

71.

Defendant denies the allegations in paragraph 71 of the Complaint.

72.

Defendant denies the allegations in paragraph 72 of the Complaint.

## COUNT VII

## WRONGFUL DEATH

### 73.

This Defendant restates and reincorporates paragraphs 1-72 as if fully set forth herein verbatim.

### 74.

Defendant denies the allegations in paragraph 74 of the Complaint.

### 75.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74, and hence, can neither admit nor deny the same.

### 76.

Defendant denies the allegations in paragraph 76 of the Complaint.

## COUNT VII (SIC)

## NEGLIGENT HIRING, RETENTION, TRAINING AND SUPERVISION AS TO ALL DEFENDANTS

### 77.

This Defendant restates and reincorporates paragraphs 1-76 as if fully set forth herein verbatim.

### 78.

Defendant denies the allegations in paragraph 78 of the Complaint as stated.

### 79.

Defendant denies the allegations in paragraph 79 of the Complaint as stated.

80.

Defendant denies the allegations in paragraph 80 of the Complaint.

81.

Defendant denies the allegations in paragraph 81 of the Complaint.

82.

Defendant denies the allegations in paragraph 82 of the Complaint.

83.

Defendant denies the allegations in paragraph 83 of the Complaint.

84.

Defendant denies the allegations in paragraph 84 of the Complaint.

This Defendant denies any and all Counts, paragraphs, and/or sub-paragraphs not specifically responded to herein, and denies that Plaintiff is entitled to recover from this Defendant in any manner or amount whatsoever.

This Defendant denies the allegations contained in the "WHEREFORE" paragraph of Plaintiff's Complaint, including all subparts, and denies that Plaintiff is entitled to any of the relief requested therein or any relief whatsoever from this Defendant.

WHEREFORE, this Defendant, for the foregoing reasons, respectfully requests an Order by this Court, dismissing Plaintiff's Complaint, awarding this Defendant all costs and attorney's fees for defending this action, and such other and further relief as the Court deems just and proper.  Plaintiff has waived a jury trial pursuant to the Alternative Dispute Resolution Agreement.  In the event Plaintiff's claims are deemed not be governed by the Alternative Dispute Resolution Agreement, Defendant demands a trial by a jury of twelve.

*** *Date and signature on following page.* ***

17

DATED this 7th day of June, 2017.

                                    **HAWKINS PARNELL**
                                       **THACKSTON & YOUNG** [LLP]


                                    */s/ Debra E. LeVorse*
                                    David C. Marshall
                                    Georgia Bar No. 471512
                                    Debra E. LeVorse
303 Peachtree Street, NE, Suite 4000   Georgia Bar No. 242229
Atlanta, Georgia  30309                *Counsel for GGNSC Administrative Services*
Tel:  (404) 614-7400                   *LLC improperly identified as d/b/a Golden*
Fax: (404) 614-7500                    *Living Center Tifton*
dmarshall@hptylaw.com
dlevorse@hptylaw.com

IN THE STATE COURT OF TIFT COUNTY

STATE OF GEORGIA

ANGE DAVIS, individually and as
Administrator of THE ESTATE OF JANIE
MAE WASHINGTON, deceased,

      Plaintiffs,

v.

GGNSC ADMINISTRATIVE SERVICES
LLC d/b/a GOLDEN LIVING CENTER
TIFTON,

      Defendants.

CIVIL ACTION

FILE NO.  2017CT040

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all counsel of record in the foregoing matter

with a copy of **DEFENDANT GGNSC ADMINISTRATIVE SERVICES LLC**

**IMPROPERLY IDENTIFIED AS d/b/a GOLDEN LIVING CENTER TIFTON'S**

**ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES** by depositing in the United

States Mail a copy of same in an envelope with adequate postage thereon, addressed as follows:

Robert L. Schenk II
Schenk Smith LLC
1126 Ponce de Leon Ave NE
Atlanta, GA  30306
*Counsel for Plaintiff*

*\*\*\*Date and signature on following page.\*\*\**

DATED this 7th day of June, 2017.

                                  **HAWKINS PARNELL**
                                    **THACKSTON & YOUNG** <sup>LLP</sup>

                                  */s/ Debra E. LeVorse*
                                  David C. Marshall
                                  Georgia Bar No. 471512
                                  Debra E. LeVorse

303 Peachtree Street, NE, Suite 4000    Georgia Bar No. 242229
Atlanta, Georgia  30309                   *Counsel for GGNSC Administrative Services*
Tel:  (404) 614-7400                      *LLC improperly identified as d/b/a Golden*
Fax: (404) 614-7500                       *Living Center Tifton*
dmarshall@hptylaw.com
dlevorse@hptylaw.com

# IN THE STATE COURT OF TIFT COUNTY
## STATE OF GEORGIA

ANGE DAVIS, individually and as
Administrator of THE ESTATE OF JANIE
MAE WASHINGTON, deceased,

      Plaintiffs,

v.

GGNSC ADMINISTRATIVE SERVICES
LLC d/b/a GOLDEN LIVING CENTER
TIFTON,

      Defendants.

CIVIL ACTION

FILE NO. 2017CT040

## DEFENDANT'S NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT

**NOTICE IS HEREBY GIVEN** that the Defendant in the above-styled action has filed in the United States District Court for the Middle District of Georgia, Valdosta Division, a Petition for Removal of said action to the United States District Court in accordance with the provisions of 28 U.S.C. § 1441 and 1446. Attached hereto and made parts hereof are a true and correct copy of said Petition for Removal and all papers and exhibits attached thereto.

DATED this 9th day of June, 2017.

HAWKINS PARNELL
THACKSTON & YOUNG LLP

/s/ Debra E. LeVorse
David C. Marshall
Georgia Bar No. 471512
Debra E. LeVorse
Georgia Bar No. 242229
Counsel for GGNSC Administrative Services
LLC improperly identified as d/b/a Golden
Living Center Tifton

303 Peachtree Street, NE, Suite 4000
Atlanta, Georgia 30309
Tel: (404) 614-7400
Fax: (404) 614-7500
dmarshall@hptylaw.com
dlevorse@hptylaw.com

IN THE STATE COURT OF TIFT COUNTY

STATE OF GEORGIA

ANGE DAVIS, individually and as
Administrator of THE ESTATE OF JANIE
MAE WASHINGTON, deceased,

      Plaintiffs,

v.

GGNSC ADMINISTRATIVE SERVICES
LLC d/b/a GOLDEN LIVING CENTER
TIFTON,

      Defendants.

CIVIL ACTION

FILE NO.  2017CT040

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all counsel of record in the foregoing matter

with a copy of **DEFENDANT'S NOTICE OF REMOVAL TO UNITED STATES**

**DISTRICT COURT** by depositing in the United States Mail a copy of same in an envelope with

adequate postage thereon, addressed as follows:

Robert L. Schenk II
Schenk Smith LLC
1126 Ponce de Leon Ave NE
Atlanta, GA  30306

*\*\*\*Date and signature on following page.\*\*\**

DATED this 9th day of June, 2017.

HAWKINS PARNELL
THACKSTON & YOUNG LLP

/s/ Debra E. LeVorse
David C. Marshall
Georgia Bar No. 471512
Debra E. LeVorse
Georgia Bar No. 242229
*Counsel for GGNSC Administrative Services*
*LLC improperly identified as d/b/a Golden*
*Living Center Tifton*

303 Peachtree Street, NE, Suite 4000
Atlanta, Georgia  30309
Tel:  (404) 614-7400
Fax: (404) 614-7500
dmarshall@hptylaw.com
dlevorse@hptylaw.com

2